## No. 14,921.

TARABINO REAL ESTATE COMPANY, INC. *v.* TARABINO.

(126 P. [2d] 859)

Decided May 11, 1942.   Rehearing denied June 15, 1942.

Mr. FRANK H. HALL, Mr. PHILIP HORNBEIN, for plaintiff in error.

Messrs. IRWIN, O'CONNELL & ZARLENGO, for defendant in error.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appeared in reverse order in the trial court and are hereinafter referred to as there, or as the

California company and Peter respectively. Other members of the Tarabino family are referred to as Michael (father of Peter), and John, Barney, and Joseph, brothers of Michael. The Tarabino Real Estate Company (of Colorado), hereinafter referred to as the Colorado company, and The Colorado Pacific Land Company (of California), hereinafter referred to as the Land company, are also incidentally concerned.

■ Peter brought this action against the California company and Joseph for an accounting and judgment for such sum as found due him. He demanded a declaration of trust to that extent, the establishment of that judgment as a first lien on defendant's property, and orders restraining alienation of assets and for the production of all pertinent books and papers. Defendants denied indebtedness, joined in the request for an accounting, and sought judgment for such sum as thereby appeared due them. A referee was appointed who took testimony and reported approximately $20,000 due Peter. The defendant moved to amend its answer and that motion was denied. It filed objections to the report which were overruled and the report, in the main, approved. Joseph was dismissed as a defendant and decree entered for Peter awarding him the sum found due by the referee, plus over $12,000 interest, a total of approximately $32,000, together with 100 shares of the capital stock of the Colorado company. The decree further declared the trust prayed for and established the judgment as a first lien on the property, subject to certain exceptions here immaterial. To review that judgment defendant prosecutes this writ and assigns seven errors. These amount simply to assertions that the judgment is unsupported by the evidence and the trust and lien are unsupported by the law. If, as we conclude, the first is good the others require no consideration. An outline of facts, more extended than we could wish, is essential to an understanding of our conclusions.

About half a century ago Michael and John were en-

gaged in the mercantile business at Engleville, Colorado, a mining camp in Las Animas county, near Trinidad. Peter was born February 6, 1900. His mother died soon after and his father died October 27, following, leaving Peter as sole heir to his estate of some $19,000. John was appointed his guardian and Barney succeeded to the property interests of Michael and took his place in the business, which was continued under the name of John Tarabino & Company. The guardian, in effect, loaned Peter's money to the partnership, evidenced by a credit on its books and the payment of interest thereon.. In May, 1911, the partners incorporated the Colorado company. Later they moved to California, where, with Joseph, they incorporated the Land Company. John died in 1918 and Barney succeeded him as guardian. He died in September, 1921, and was succeeded as guardian by Joseph whose appointment was merely for the purpose of closing the guardianship. Early in 1929 the Tarabinos incorporated the California company, plaintiff in error. It was organized to take over the other two corporations. There were but five stockholders, including Peter, and all were directors. They held but one meeting and that on January 15, 1929. The plan was for the California company to issue 3000 shares of stock, one to each director, 1498 to the Land company, and 1497 to the Colorado company. Each of these was then to exchange this California company stock with its own stockholders for its own stock and credits, and dissolve. All this clearly appears from the evidence and the minute books of both the Colorado and California companies. All the property of the Colorado company and the Land company was transferred to the California company in all these transactions Peter actively and affirmatively participated. He signed the articles of incorporation of the California company and prepared and signed the notice of dissolution of the Colorado company whose certificate recited that all its debts had been paid. As an officer of the latter he joined in the execution of

all its transfers. In January, 1925, he participated in a meeting of the stockholders of the Colorado company at which its bylaws were amended and voted in favor thereof. The same month he participated and moved the ratification of all acts of directors for the preceding year. The following January he participated in a stockholders' meeting of the Colorado company and was elected a director and assistant secretary. The same month, in a directors' meeting, he was elected secretary-treasurer. In January, 1927, 1928, and 1929 he participated in stockholders' meetings of the Colorado company and signed the minutes as secretary. At the last mentioned meeting it was resolved to organize the California company and that the Colorado company and the Land company should be liquidated after discharging their liabilities and consolidated with the California company as above. Peter made that motion and signed those minutes. It was provided that if the stock and credits of the old companies exceeded $300,000 there was to be a proportionate reduction in the issued shares of the California company. The contemplated exchange never took place. Quite apparently because of a disagreement with Peter and a deficiency in shares to the extent of $15,000. Peter had acted as secretary of the Colorado company while Joseph, its then secretary, was in the army during the First World War, and he worked for that company in the summer of 1921. He reached his majority February 6, 1921, and when Joseph, his last guardian, filed his final report and was discharged October 22, 1922, that report showed a balance due in his hands of over $29,000 and was accompanied by Peter's receipt therefor. No cash was in fact held or passed. Credits in his favor on the books of the partnership were simply passed over to the books of the Colorado company on its organization and the balance, reported by his guardian Joseph and receipted for by him, was simply represented by those credits, as was well known to both. Thereupon the Colorado company paid

interest as per agreement with Peter. All these partnerships and corporations were family organizations in which only the Tarabino family was interested.

Peter, after many harmonious years, asserted what appears to have been an unfounded claim to a credit of $15,000 over and above his credits as disclosed by the books of the Colorado company. This was the beginning of the discord and originally the principal bone of contention in this litigation. It was apparently based upon alleged misappropriations by John and Barney as guardians and it seems that insistence upon it by Peter was the one thing that prevented the consumation of the agreement for exchange of stock, etc., on the organization of the California Company. He says that in September 1921, Barney, on his deathbed, gave him some intimation that he was entitled to such a credit, hence in December, 1926, he entered it in his favor upon the books of the Colorado Company and from that time demanded "what was coming to him." Later Joseph discovered the entry and from time to time it was discussed. Joseph testifies that he conducted a continuous investigation with respect to it, finally learned that it was wholly unjustified, and January 2, 1930, wrote it off. That claim was disallowed by both the referee and the court and has now been abandoned by Peter. The record discloses nothing to support it. Because of that unsettled claim the stock of the California company has never been distributed as contemplated save one share to each stockholder (who was also a director) and the profits, which have not been large, have simply been distributed among the stockholders but not, technically, as dividends on stock. During all these years Peter has been credited with interest as per agreement and charged with his living expenses, education and other expenditures, including a purchase by him of $10,000 worth of stock of the Colorado company September 1, 1923. At times he drew certain sums, amounting in all to more than $1,000, from the Land company and these charges

were transferred to the books of the Colorado company. His present claim now insisted upon simply amounts to this, i.e., that his guardians were trustees, that they used his money in their business, that this was a violation of their trust, that the stamp of that trust followed through from the partnership to the Colorado company and through it to the California company and should now be impressed upon all the property of the latter as a first lein, not only because of the conduct of his guardians, but because the facts upon which he relies were well known at all times to all other members of the family. The only reason urged by Peter why he should thus be absolved from responsibility for his own affairs and entitled to recover as for a violated trust, is that from the time of the death of Barney, Joseph was the dominating personality in all these transactions and that Peter was simply his "yes" man, uninformed and trustingly doing just as Joseph directed. That theory is unsupported by the record and cannot be upheld by the court.

There is no evidence here of Peter's mental incompetence, or of any fraud perpetrated upon him, or of any concealment or deception by his associates. These transactions were all open and aboveboard. He participated in all of them and since he was in a position to be perfectly familiar with all their details must be held to have had that knowledge. The Colorado company was at one time a very prosperous concern and Peter's money could not have been better invested. His income therefrom was apparently ample and his affairs well managed. When he bought stock in the Colorado company it is perfectly apparent that he considered the advantages of that purchase would exceed the profits derived from continuing to loan his money. When at the close of his guardianship he took credit on the company's books for the amount due him he was a mature man and must be held to have known exactly what he was doing and to have acted in the belief that such credit was better than cash. That closed the guardianship

and definitely ended the trust. From that time on his claim was limited to interest on his money and dividends on his stock. When as an officer of the Colorado company he participated in the organization of the California company and became an officer thereof he was bound by the agreement as above outlined, and when he failed to get credit for his additional claim of $15,000 he was not thereby released from his engagements. His position in the California company is therefore that of a stockholder bound by its contracts and those of its predecessor, the Colorado company. On that basis he is entitled to his proportionate share of the stock of the California company based upon his stock in the Colorado company and his credits shown upon its books. This includes credit for interest on his money invested in the Colorado company by his consent, but that interest is not to be compounded where no specific contract therefor appears. If on this basis the stock issue of the California company is not sufficient to carry out its plans the pro rata distribution thereof can easily be proportionately reduced, or other method of equitable adjustment resorted to. Peter's claims to trust and lien thereby disappear. Those transactions, extending over twenty years of his manhood, in which he participated, from which he benefitted, and of which he had, or is necessarily presumed to have had, full and detailed knowledge, are his personal acts to the same extent as if he had bound himself thereto by express written contract.

Where such a trust as here claimed is relied upon evidence thereof must not only be conclusive, the proof must go to each essential element of the case. *Colorado Co. v. Harris*, 97 Colo. 309, 49 P. (2d) 429. Here evidence of continuation of the trust after final settlement of the guardianship is not merely unconvincing, it is clearly to the contrary. Peter's receipt for cash with a definite understanding that it was represented by credits, is, in the absence of fraud or concealment, sufficient on this point. But added thereto is the further fact of his contract with

the Colorado company for interest on such credits and the payment and receipt thereof with full knowledge and without protest for many years. In such soil no trust could flourish. Restatement of the Law—Trusts, vol. 1, p. 42, §12g.

■ Compound interest is allowable only when definitely agreed upon. *Denver B. & M. Co. v. McAllister,* 6 Colo. 261, 268.

The judgment is reversed and the cause remanded to the district court with directions to enter such judgment as shall be in conformity herewith and with power to take additional testimony, if such be necessary to that end.

Mr. Justice Bakke and Mr. Justice Bock concur.

Mr. Chief Justice Young dissents.

*On Petition for Rehearing.*

Mr. Justice Burke.

This petition raises no doubt in our minds of the correctness of the reversal. However, it contains certain statements of fact not found in the record and not relied upon on the trial which, if true, may result in misconstruction of the opinion; hence this explanation.

When we said, "All this clearly appears from the evidence and the minute books," it was not intended to convey the impression that it so appeared from each.

This was an action by Peter demanding an accounting with the company, in which demand it joined. Other members of the family were not made parties and their individual status, whatever it may be, was not adjudicated. The opinion is based upon the theory, stoutly maintained by the defendant, that Peter went into the California company on the same basis as the other participants, i. e., an exchange of stock for stock and credits. It was not claimed on the trial that the others

were not bound by the limitations which the company sought to impose, and which the opinion imposes, upon Peter, nor was there evidence to that effect. All stockholders are placed, as to stock and credits, on an equal basis, with preferential rights to none.

The rehearing is denied.

MR. CHIEF JUSTICE YOUNG dissenting.

I cannot agree with the disposition of this case made by the opinion of the majority of the department, and I respectfully dissent thereto.

The referee appointed to make an accounting found, and the court approved and adopted his finding, that by virtue of the antecedent transactions between Peter and the Colorado company, Peter had 100 shares of stock, of the par value of $10,000, in the Colorado company and was entitled to a credit of approximately $20,000 on the books of the latter when the California company was organized and took over its property in 1929.

The referee further found that Peter was entitled to a large interest credit, the amount of which was determined by compounding the interest on what was due him annually. The amount of this credit and the method of its determination, whether by compounding it or otherwise, would require consideration in writing an opinion. I do not comment upon this matter because the basis of my dissent, as fully appears by considering only the principal of that credit of approximately $20,000, the amount of which is not in dispute, as though the principal and interest were considered. In defendant's assignments of error it is stated that Peter was "either a creditor or a stockholder" of the California company. This, as I view the record, leaves only the legal question of whether a trust may be impressed to secure the debt on the property received by the California company from the Colorado company.

The minutes of the stockholders' meeting of the Colorado company, in which authorization was given to

transfer its assets in consideration of the receipt of 1500 shares of stock of the California company, also provided that the liabilities of the Colorado company were to be first liquidated. The opinion of the majority of the department correctly so states. Peter's twenty thousand dollar credit on the books of the Colorado company was a liability of that company which he had a right to assume, at the time he signed the minutes as secretary, was one of the liabilities to be liquidated. The assets of the Colorado company constituted a specific res out of which Peter, as a creditor of the Colorado company at the time of dissolution, was entitled to have his twenty thousand-dollar claim paid. Unless at the time of the dissolution of the Colorado company, or since, he did or has done something to forfeit that right, he still possesses it and it should be recognized in equity.

The minutes of the California company, when organized, authorized the issuance of 1500 shares of the stock of that company to be exchanged, share for share, for the 1500 shares of the Colorado company. There was no mention in the minutes of either company authorizing the transfer, of the issuance of stock in payment of the indebtedness of the Colorado company, for the obvious reason that if the exchange was made after the liabilities of the Colorado company were liquidated, there would be no credits due any person on the books of that company. The prior authorizations of the exchange of assets and of stock for assets clearly contemplated that Peter's claim would be satisfied out of the property of the Colorado company before the California company took it over. Every stockholder of both companies knew that Peter had this credit in the Colorado company and they should be held to have known that he was entitled to have it satisfied out of the property of the Colorado company before the exchange was consummated. The minutes that Peter signed as secretary of the Colorado company so specify.

If it be held that this property, taken over from the

Colorado corporation by the California company, is not subject to the liability to pay Peter's claim, then the California company and its stockholders are unjustly enriched by twenty thousand dollars in which Peter, by virtue of his 100 shares of stock in the Colorado company entitling him to 100 shares of stock in the 3,000-share issue of the California company, will have a beneficial interest equal to one-thirtieth of the twenty thousand dollars, to the whole of which it is not disputed he would have been entitled had he insisted on settlement of his credit prior to the transfer. If Peter's twenty-thousand dollar credit be deemed the same as twenty thousand dollars worth of stock in the Colorado corporation and an exchange made on that basis, the stockholders of the California company will be unjustly enriched at Peter's expense to the extent of twenty-seven thirtieths of the twenty thousand dollars that he contributed to the California company by not insisting on settlement in accordance with the plan of exchange authorized by the minutes of the two companies. Joseph says that Peter agreed to such an arrangement and that all the others who had credits agreed to such an arrangement, although not one comes forward to testify that he had a credit and agreed to take stock therefor. Peter denies that any such agreement was made, and his contention is consistent with the formal action of the two companies expressed in their minutes. Joseph testified that the minutes of the stockholders' meeting, formally authorizing the plan of exchange, made no provision for issuing stock for credit. It is difficult to understand how these parties, stockholders in a so-called family corporation, who apparently knew, and as a matter of law should be held to have known, about Peter's credits, will be injured by impressing a trust on the property in the hands of the California corporation to the extent of Peter's claim, any more than they would have been injured had that claim been paid out of the property which the California corporation received from the Colo-

rado company before the transfer was made, as clearly was contemplated by all parties in interest, for that is what they formally expressed in the minutes of the meetings of both the old and new companies.

It cannot be said in reason, that the California company was not indebted to Peter, in view of the fact that in 1932 and 1933, three and four years after the organization of the California company, it recognized an obligation by paying him eight cents monthly on each of his 100 shares in the old Colorado company and a like amount on each hundred dollars of his credit, *including the disputed $15,000* which Joseph says was stricken from the books in 1930, but admits by his action he was still recognizing in 1933. If, as regards his credits, Peter was willing to accept a return on his credit of what amounted to less than one per cent (96 cents per $100) a year rather than to insist on the interest he had been receiving, he had a right to do so, for he was of full age and could do as he pleased in that respect.

The only act disclosed by the record to have been performed by Peter that can be said even remotely to indicate that he surrendered, or intended to surrender, his right to be repaid his debt out of the property of the Colorado company was his signing, as secretary of the latter company, a dissolution notice reciting that all the debts of that company had been paid. This, considering the fact that all the companies were family corporations, coupled with the subsequent recognition by the California company that the credit still existed, is not sufficient to compel a court of equity to take from Peter a credit, in effect secured by the assets of the Colorado company, and give him in lieu thereof stock in, or an unsecured claim against, the California company without clear and convincing evidence that he agreed thereto. The only evidence of such an agreement is Joseph's testimony and that of Barney, junior, who was not even a stockholder of the Colorado company, all of which Peter denies. If any others had credits on the books of the

Colorado company, of which similar disposition was to be made, the record is barren of any testimony from them to that effect. The trial court, if no better able, was at least as well able as we to resolve the conflict in the evidence given before the referee, and he found for Peter.

The fact that Peter claimed the right to impress a trust on the property in the hands of the California company on the theory that it arose out of the manner in which his guardians and the Colorado company dealt with his guardianship funds—even if that is an erroneous theory, which I think need not be decided—should not bar his right to impress a trust on the assets received from the Colorado company if the facts disclosed by the record relevant to the theory upon which he proceeded show that upon another sound legal theory he is entitled to the relief.